## STATE *versus* STEPHEN PHINNEY.

A. was arraigned upon an indictment containing four counts; the first two charged an assault, in different forms, with intent to *murder ;* the last two charged an assault with intent to *kill : — Held,* that all the counts charged but one substantive offence, and that it was competent for the jury to find him guilty of an assault simply, or of an assault with intent to kill, or of an assault with intent to murder.

The accused is entitled to a verdict upon each and every substantive charge in an indictment; and it is the duty of the Court to require the jury to respond distinctly to the several counts contained therein.

When there are several counts, and the jury find the defendant guilty on one count, and are silent as to the rest, the legal effect of the verdict is, an acquittal as to the others.

An officer, when making an arrest, is bound, on demand, to make known his authority.

But his omission to do so, only deprives him of the protection which the law would otherwise throw around him in the rightful discharge of his official duty.

If a person, having been arrested, escapes, without questioning the authority of the officer, he is not to the same extent entitled to demand his authority, upon a re-arrest, as he was before.

State *v.* Phinney.

If there is any thing peculiar in the situation of a party, requiring the modification of an instruction given by the Court to the jury, it is the duty of the party to call the attention of the presiding Judge thereto.

ON EXCEPTIONS, &c., from *Nisi Prius*, HOWARD, J., presiding.

This was an indictment, containing four counts, for assault, with intent, &c. The prisoner was found guilty upon the last count. A motion was made by his counsel in arrest of judgment; also that the verdict might be set aside, and a new trial granted. Various causes were assigned; but those which had a bearing upon the decision are stated in the opinion of the Court. Exceptions were also filed to certain instructions given by the presiding Judge, and to his rulings in refusing to give instructions.

*Wells* and *Gerry*, for defendant.

1. The jury should have rendered a verdict upon all the counts, or stated their inability to agree. *State* v. *Creighton*, 1 Nott & M'Cord, 256; 1 Chit. Crim. Law, (Perkins' ed.) 638, in note.

2. The verdict is against the weight of evidence.

3. The officer is bound, upon request of the person arrested, to show the precept by which the arrest is made, and his aid is bound to make known, upon request, the authority by which he acts. The instructions in relation to these subjects were erroneous. 1 Russ. on Crimes, 518; 9 Coke, 69, note; *McKalley's case*, Frazer's ed.; *Countess of Rutland's case*, 6 Coke, 54; 1 Hale's Pleas of the Crown, 458; *Hall* v. *Roche*, 8 T. R. 187; *Frost* v. *Thomas*, 24 Wend. 418; *Bellows* v. *Shannon*, 2 Hill, 86.

RICE, J.—This case comes before us on a motion in arrest of judgment; on a motion for a new trial, on the ground that the verdict was against the evidence, &c.; and also on exceptions to the rulings of the presiding Judge.

The causes assigned for arresting judgment are numerous. The first two causes assigned, contain, it is believed, the substantive matter relied upon, under this motion.

The first cause is thus set out; "because there was a mis-

trial of this cause, inasmuch as there are four counts in the indictment, and the jury rendered a verdict on one only—to wit, the fourth and last count in the indictment." The second will be considered with the first.

The authorites do not concur as to the effect of an omission on the part of the jury to respond, in their verdict, to all the counts in an indictment. Thus, in *King* v. *Hays*, 2 Ld. Raymond, 1527, it was held to be well settled, upon authority, that if a jury find but a part of the matters put in issue, and say nothing as to the rest, it is ill; and in 1 Chit. Cr. Law, 641, it is said, "with respect to the form in which the verdict should be given which thus partially convicts and acquits, it has been holden, that it ought to find specifically not guilty of the higher, and guilty of the inferior charge; and if it merely find the defendant guilty of the inferior offence it will be of no avail." *State* v. *Sutton*, 4 Gill. 494.

In *Kirk* v. *Com.*, 9 Leigh, 627, it was held that when a verdict finds a prisoner guilty upon some of the counts in an indictment, saying nothing of others, judgment of acquittal should be entered upon those counts of which the verdict is silent. The same rule was adopted in *Com.* v. *Bennet*, 2 Va. Cases, 235.

In *Stoltz* v. *The People*, 4 Scam. (Ill.) 111, the defendant was indicted in two counts. The first count charged the accused with keeping a gaming house, and the second, with keeping open a tippling house on Sunday. The verdict was guilty on the first count, but no finding on the second. The Court said, "the general rule is, that the verdict must be as broad as the issue submitted; and it was formerly held with much strictness, that a failure to find on all the issues, vitiated the verdict. The tendency of modern decisions, however, has been to relax the severity of the rule, and sustain the verdict, when the intention of the jury can be ascertained. What is the reasonable view to be drawn from this verdict? The people prefer two charges of criminal offences against the defendant. He is arraigned on them, and the question of his guilt submitted to the jury for their determination. They

hear the testimony adduced to substantiate both charges, and find affirmatively that he is guilty of one. Is not the inference inevitable that the prosecution failed to establish his guilt on the other charge, and therefore the jury find negatively on it? We are of the opinion that the verdict should be regarded as an acquittal of the defendant on the second count. If such be the effect of the verdict, he certainly has no right to complain. He can never again be put on his trial for the same offence."

Other Courts have held that the proper course to be pursued, was to disregard those counts on which the jury were silent, and proceed to judgment on those upon which a verdict was rendered. *State* v. *Coleman*, 3 Ala. 14; *Aubens* v. *State*, 6 Ala. 20; *Swinney* v. *State*, 8 G. & M. 576.

Other authorities, still, hold that the proper mode of disposing of the counts on which the jury omitted to return a verdict, is by entering a *nolle pros.* by the prosecuting officer, under the direction of the Court. *Com.* v. *Steadman*, 12 Met. 444; *U. States* v. *Keene*, 1 McLean, 429; Bishop's Criminal Law, § 677.

The indictment in the case at bar contains four counts. The first two charge an assault, in different forms, with intent to *murder;* the last two charge an assault with intent to *kill*. They all refer to one transaction, charging but one substantive offence, with different degrees of aggravation. If the evidence would have authorized, it was competent for the jury to have found the defendant, under this indictment, guilty of an assault simply, or of an assault with intent to kill, or of an assault with intent to murder, as the two former are elements of, and necessarily included in the latter, or higher and more aggravated offence.

The defendant was entitled to a verdict upon each and all the substantive charges in the indictment, and it was the duty of the Court to have required the jury to respond distinctly to the several counts contained therein.

The intention of the jury cannot, however, be misunderstood. They manifestly intended to find the defendant guilty

on the fourth count, and not guilty on the first three; and such, we think, is the legal effect of the verdict, whether a *nolle pros.* be entered or not. *Weinzorpflien* v. *State*, 7 Blackf. 186. The case is analagous to an indictment for murder where the jury return a verdict for manslaughter. The motion in arrest cannot prevail.

There are many causes assigned for setting aside the verdict, and granting a new trial. The fourth cause assigned is, because " said verdict was rendered against the evidence and the weight of the evidence." A full report of the evidence, certified by the presiding Judge, accompanies the case.  An examination of this report has satisfied us that the verdict was authorized by the evidence, if believed by the jury, and therefore, that it should not be disturbed for the cause assigned, if we have the power to do so, which is not wholly free from doubt. There are no facts before us, from which we can determine whether the other causes assigned for a new trial are well assigned, or otherwise. This motion must therefore be overruled.

There remains for consideration the legal questions raised by the exceptions.

The defendants' counsel, among other things, desired the presiding Judge to instruct the jury, " that an officer's aid, when he has made an arrest, if called upon by the person arrested, is bound to state, in some intelligent manner, the authority by which he assumes to act, and if he neglects or refuses, the party arrested may lawfully resist."

Upon this request, after referring to previous instructions, the Judge instructed the jury, " that the aid's duties in this respect, were the same as those of the officer." He had  previously instructed them, " that the officer, after the arrest of a person, if called upon by the person arrested to state his authority or show his precept, is bound to give reasonable information; but that he would not be bound, under all circumstances, to show his precept. Yet the person arrested has a reasonable right to know by what authority he was arrested."

It is contended that the requested instruction should have been given without qualification, and that the instructions given were erroneous.

In the *Countess of Rutland's case*, 6 Coke, 54, it was held that the officer is bound to give the substance of the warrant or process, to the end that the party may know for what cause he is arrested, and take proper legal measures to discharge himself.

In *Hall* v. *Roche*, 8 T. R. 187, Lord KENYON thought it a most dangerous doctrine, that the officer was not bound to show the warrant of the arrest when the party demands to see it, because it may affect the party criminally in case of resistance. He added: — "I do not think that a person is to take it for granted, that another who says he has a warrant against him, without producing it, speaks the truth."

In *McKalley's case*, 5 Coke, 11, it was resolved that the officer is bound to state his authority or show his warrant, where the party submits to the arrest; and where the party (as in that case,) makes resistance and interrupts him, and before he could speak all his words, he was mortally wounded and murdered, in which case the prisoner shall take no advantage of his own wrong. It was also resolved in that case, that if one knows that the sheriff has a process to arrest him, and coming to arrest him, the defendant, to prevent the sheriff's arresting him, kills him with a gun or other engine or weapon, before any arrest made, it is murder. In a note to this case, it is said the party must have some notification of the officer's business, or killing will not be murder. If he be a known officer, the law will imply notice. If he be a special bailiff, named in the process, he must declare his business and authority, as by using words of arrest or the like; and if such declaration be true and the process legal, and afterwards he be killed, it will be murder.

In no case, however, is the officer required to part with the warrant out of his own possession, for that is his justification. But it is very important in all cases where an arrest has been

made by virtue of a warrant, that the warrant, if demanded, should be produced. 1 East, P. C. 519; 1 Hale, 458; Fost. 311.

In *Bellows* v. *Shannon*, 2 Hill, 86, it was said by BRONSON, J., that "although the officer is not bound to exhibit the warrant, especially where there may be reason to apprehend that it will be lost or destroyed, yet I cannot doubt that it is his duty to inform the party, when such is the fact, that he has a warrant, or to make known in some other way, that he comes in his character as an officer to execute process, and not leave the party to suppose that he is a wrongdoer. The contrary doctrine would lead to violence and bloodshed. I do not say the officer is bound to declare the particulars of his authority before he makes the arrest, or that it may not sometimes be proper to lay hands on the party before a word is spoken; but either before, or at the moment of the arrest, the officer ought to say enough to show the party that he is not dealing with a trespasser, but with a minister of justice."

All the authorities concur in the doctrine, that where an arrest has been made by a party not known to be an officer, and who refuses, on demand, to exhibit his precept, or declare his authority, and resistance is made to such officer, and death ensue to the officer from such resistance, such killing will not be murder, but manslaughter only; but it is nowhere held that the assailant, under such circumstances, could be wholly free from guilt.

It by no means follows, therefore, that, because it is the duty of an officer to exhibit his precept, or declare his authority on demand, if he omits or refuses to do so, a person legally arrested, may, with impunity, kill such officer, or assault him with intent to kill. Such a doctrine would place an officer, with a legal precept in his hand, in a worse position than an ordinary private citizen. For, in the latter case, the party assailed would be permitted by law to use so much force only, as was reasonably necessary to protect his own person from violence. The omission of an officer to exhibit or declare

his authority, can do no more than deprive him of the protection, which the law throws around its ministers, when in the rightful discharge of their official duty.

This distinction does not appear to have been noticed at the trial.

The evidence, which is made part of the case, shows that the defendant had, on a day previous to the alleged assault, been arrested on a warrant, by one Brown, a deputy sheriff, from whom he had made an escape. Brown had employed Plummer, the party assaulted, as an aid, to assist in retaking the defendant. At the time of the assault, Brown remained in concealment, and sent Plummer, with other assistance, to capture the defendant. Bearing upon this state of facts, the jury were instructed by the Court, " that if the prisoner had been previously arrested on the same warrant, by the officer Brown, and had escaped without questioning his authority, he was not entitled to the right to the same extent, to demand the authority, after his escape, that he would have had if he had not escaped from the arrest." This instruction, it is suggested, would have been strictly correct, had the re-arrest been made by Brown, or by an aid acting under his immediate direction and in his presence, but when applied to Plummer, who does not appear to have been an officer, or in any way connected with the original arrest, the instruction is erroneous.

As an abstract proposition, the instruction is clearly right. If there was any thing in the peculiar situation of the parties or their relations to each other, which would require a modification of the general rule, and which had escaped the attention of the presiding Judge, it was the duty of the defendant to call his attention thereto.

The Judge, after having fully instructed the jury as to the rights of the defendant and the duty of the officer as to giving notice, remarked, " that the aid's duties in this respect were the same as those of the officer." Taking the whole instructions together, we are of the opinion that the jury

could have been under no misapprehension as to the duty of the officer, nor his aids, nor as to the rights of the defendant.

*The motions and exceptions are overruled,*

*and there must be judgment on the verdict.*

TENNEY, C. J., concurred in the result, and APPLETON, J., concurred.