STATE *vs.* ALPHONSE G. FAZZANO.
STATE *vs.* ALPHONSE G. FAZZANO.

OCTOBER 29, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. These two cases are before us on certifications from the superior court of an identical question of doubt and importance in each case. The cases are actually pending in the superior court upon like petitions filed in each case for a writ of habeas corpus ad subjiciendum by which the petitioner seeks his release from confinement at the adult correctional institutions.

The findings of fact made by the superior court in connection with the certifications disclose the following to be essential to a disposition thereof:

1. On November 24, 1954 petitioner on his pleas of nolo contendere was given deferred sentences on indictment No. 27111 which charged him with breaking and entering in the nighttime with intent to commit larceny, and on indictment No. 27112 which charged him with possession of burglar tools. It is within these proceedings that his petitions for habeas corpus have been filed.

2. On October 15, 1956 a deferred sentence was imposed on petitioner upon his plea of nolo contendere to indictment No. 27963 charging him with unlawful possession of narcotics.

3. On April 16, 1957 petitioner, having violated the deferred sentences given to him on November 24, 1954 on indictments Nos. 27111 and 27112, was sentenced to serve a term of 7 years on each deferred. Said sentences are sometimes hereinafter referred to as "origi-

nal sentence." The findings of fact do not disclose whether in imposing sentences for such violations the trial justice stated whether the terms were to run consecutively or concurrently.

4. On October 4, 1961 the parole board acting upon the petitioner's application voted to parole him and thereafter he was released from the adult correctional institutions on October 16, 1961, on which date the unexpired portion of the original term was 10 months and 20 days.

5. On February 14, 1962 while at liberty on parole a sentence of 15 months was imposed on petitioner for violation of the deferred sentence given to him on October 15, 1956 on indictment No. 27963.

6. On February 28, 1962 while petitioner was serving the 15 months sentence his parole permit was revoked by the parole board which ordered that the unexpired portion of the original sentence be served consecutively to the 15 months sentence.

In each case at the time the petition filed therein for a writ of habeas corpus was heard before the superior court, a justice of that court, under the authority of G. L. 1956, §9-24-27, certified to us the following question as one of doubt and importance:

"Do the provisions of 13-8-20 of the General Laws of 1956 which provide that the Parole Board may order that the time of serving the remainder of the original sentence of a parole violator shall run concurrently with or consecutively to another sentence imposed on said prisoner for an offense committed while at liberty upon parole, conflict with the provisions of Article III of the Rhode Island Constitution, which provides that 'the power of the government shall be distributed into three departments, the legislative, executive and judicial.' "

The questions certified assume that at the time of the revocation of his parole permit, petitioner was confined under a sentence imposed for the commission of a crime while at liberty under parole. The findings of fact accompanying

the certified questions negate such assumption. The petitioner was at the time of revocation confined in the adult correctional institutions on a criminal process resulting from a 15 months sentence for the violation of a deferred sentence and not by virtue of a sentence imposed for an offense committed while at liberty on parole. Since the constitutional issue raised is identical in either instance, we will answer the questions certified even though in form it may not be applicable to the finding of facts accompanying the certifications. See *Prescott* v. *Kelley,* 52 R. I. 45.

Section 13-8-20 is set out in full in the appendix hereto. The certified questions ask us to determine whether the portion which we have italicized is in conflict with art. III of the constitution of this state which provides that "The powers of the government shall be distributed into three departments: the legislative, executive and judicial." Stated otherwise, the questions certified request a determination by us of whether the discretionary grant of power to the parole board in §13-8-20, to determine whether the unexpired portion of an original sentence shall be served concurrently with or consecutively to some other sentence, constitutes an unconstitutional legislative usurpation of the judicial prerogative.

Since petitioner was not admitted to bail at the time of the certifications, the problem is presented of our right to hear these matters in view of that portion of §9-24-27 which provides "that no question shall be so certified in any criminal case where the defendant has not been released on bail." This issue was not briefed by counsel and we expressly refrain from passing thereon. Our failure to do so, however, should not be construed as either approval or disapproval on our part of the §9-24-27 procedure being used in any criminal proceedings without regard to whether or not the defendant has been admitted to bail.

Section 13-8-20 embodies two legislative declarations. The first is a mandate to the effect that the original sen-

tence of one whose parole has been revoked by the parole board while in a penal institution under criminal process or under sentence for an offense committed while at liberty on parole *must* be served consecutively to the time being served at the time of the revocation of the parole permit. We shall hereinafter sometimes refer to that portion as "the mandate" of the statute. The mandate was first enacted by P. L. 1915, chap. 1186, sec. 5, and as contained in §13-8-20 is in substantially the same form. The second declaration in §13-8-20, which is the portion we have italicized, was enacted by P. L. 1953, chap. 3129. We shall sometimes hereinafter refer to it as "the discretionary power."

Notwithstanding that the certified questions relate only to the discretionary power, we shall discuss both it and the mandate since the constitutionality of each was the subject of oral argument before us. The threshold question is whether the portion of the mandate that directs that terms be served consecutively was beyond the power of the legislature constitutionally to enact.

In our opinion a legislative body is not inhibited from providing that a sentence for an offense committed while at liberty on parole shall run consecutively with the unexpired portion of an original or prior term. Any such enactment is not in conflict with the inherent judicial power to impose consecutive or concurrent sentences. This is the clear implication of the cases. *In re Callahan,* 348 Mich. 77; *Harding* v. *State Board of Parole,* 307 Mass. 217; *Canfield* v. *Commissioner of Pardons & Paroles,* 280 Mich. 305; *Ex parte Green,* 322 Mo. 857; *People ex rel. Newton* v. *Twombly,* 228 N. Y. 33, reversing 190 App. Div. 882.

In *Twombly, supra,* the New York Court of Appeals construed a statute which provided: "Where a person, under sentence for a felony, afterwards commits any other felony, and is thereof convicted and sentenced to another term of imprisonment, the latter term shall not begin until the ex-

piration of all the terms of imprisonment, to which he is already sentenced."

Upon application of a relator whose parole was revoked after conviction and sentence to imprisonment for a crime committed while at liberty on parole, the court of appeals refused to release the petitioner. The court speaking through Judge Cardozo, later an associate justice of the United States Supreme Court, said: "Under this statute, the declaration of delinquency, when followed by the return of the prisoner, postponed the execution of the second sentence until the execution of the first had been completed. * * * It is the mandate of the statute, establishing the order of succession in which sentences shall be served. * * * When the relator was declared delinquent, there were thenceforth two sentences of imprisonment in force. The law says that they must be served consecutively * * *."

A similar construction was given by the Michigan court in *Canfield, supra,* to a statute which provided: "Any prisoner committing a crime while at large upon parole or conditional release and being convicted and sentenced therefor shall serve the second sentence to commence from the date of termination of the first sentence after the first sentence is served or annulled."

And in *Callahan, supra,* the Michigan court citing *Canfield, supra,* held that it is within the exclusive jurisdiction of the legislature to determine the length of a sentence which can be imposed upon conviction of a felony, the power of the judiciary being limited to the ministerial function of imposing a sentence within the permitted statutory limits.

Some courts have gone even further and held that where statutes require sentences to be served consecutively such statutes control even if the judge imposing the second sentence has directed that the sentences run concurrently. *Commonwealth ex rel. Godfrey* v. *Banmiller,* 404 Pa. 401; *Hammerer* v. *Huff,* 110 F.2d 113 (D.C.Cir.).

478

Not only is it within the power of the legislature to provide that one who violates his parole must serve the balance of the original term and the term imposed for the violation consecutively, but it is also clearly within its power to provide that the balance of the original term shall be served only if a parole board in its sole discretion revokes the conditional release or parole given to the offender.

A person imprisoned by a court is turned over to an administrative agency for the execution of the sentence. The imprisonment can, if so authorized by the legislature, be ameliorated by allowing it to be served beyond the confines of the penal institution on parole. *Anderson* v. *Corall,* 263 U. S. 193. This is not a right of a prisoner, but accrues to him through legislative grace and can be withheld or withdrawn by the legislature at will. As part of the act of grace it is within the legislative power to attach conditions to the grant of parole and to provide for the administration thereof. See *Rondoni* v. *Langlois,* 89 R. I. 373, 377. Courts have no power to determine the penological system; this is within the exclusive jurisdiction of the legislature. *Commonwealth ex rel. Banks* v. *Cain,* 345 Pa. 581. As part of its power the legislature can grant to the parole board the exclusive right to determine *if* a parole permit shall be revoked and any such revocation by the parole board made within the limits of the legislative authority given to it cannot be attacked. *Zerbst* v. *Kidwell,* 304 U. S. 359.

The *Zerbst* case was decided by a unanimous court which included Mr. Chief Justice Hughes and Associate Justices Brandeis, Stone and Black. Its authoritative weight is compelling. There habeas corpus was denied to a prisoner whose parole had been revoked by the parole authorities and who was being held by the prison warden for the unexpired portion of the original term after completion of his sentence for a second federal offense. The federal act gave discretionary authority to the board of parole to revoke a parole at any time before the expiration of a parolee's sen-

tence. Such discretionary grant in effect gave the board the power to determine whether a violator should serve additional time. If it failed to revoke, no time other than that imposed for the commission of the second offense would be required to be served. It would be otherwise if the board revoked since the federal act required that the terms be served consecutively.

The court held that such a power was a necessity in order to insure a proper working of the parole system and in this connection at page 363 said:

"Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board. Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offence committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified. If the parole laws should be construed as respondent contends, parole might be more reluctantly granted, contrary to the broad humane purpose of Congress to grant relief from imprisonment to deserving prisoners."

Our opinion as to the validity of the mandate in §13-8-20 applies as well where the parolee at the time of the revocation of his parole is confined in a penal institution by virtue of having been sentenced for a violation of a deferred sentence as it does where such imprisonment has come about as the result of conviction for a crime committed while at liberty on parole.

Having determined that the enactment of the §13-8-20 mandate as to consecutiveness rather than concurrence in the present circumstances is within the legislative power and that the power to determine whether the parole shall be revoked can be vested in the parole authorities, we next come to the construction of the grant made in 1953 of the

discretionary power to the parole board. It has been assumed in this state that parole acts, using the term generically, are constitutional and that it is clearly within the legislative power to ameliorate a judicial sentence. This is in accord with the rule generally applying elsewhere. 39 Am. Jur., Pardon, Reprieve and Amnesty, §83, p. 572. See *Rondoni* v. *Langlois, supra; Lee* v. *Gough,* 86 R. I. 23; *Lee* v. *Kindelan,* 80 R. I. 212. If it were not so held, our parole system could not exist and those serving sentences for commissions of crimes could obtain releases prior to expiration of the terms to which they had been sentenced only by pardon or executive clemency.

The intention of the legislature in the 1953 amendment of the parole statute which gave to the parole board the discretionary power cannot reasonably be interpreted as being other than an authorization to that board to provide that the sentences shall run concurrently when and if the board deems that the rehabilitation process can best be achieved by a shorter term of imprisonment. If this were not so, the mandate of §13-8-20 would require that upon revocation the terms run consecutively. When §13-8-20 is read as a whole and not segmentalized, the expressed legislative intention is that an original term must run consecutively to a sentence being served at the time of revocation of parole excepting only if the parole board, in the interest of the parolee and in order to lessen the time he shall serve, shall determine that the sentences shall run concurrently.

The discretionary power was enacted for the benefit of those who like petitioner violate the conditions of their parole. Save for the addition of such power neither the judiciary nor the parole board could validly authorize a concurrency in the service of sentences which the legislature had constitutionally directed must otherwise be served cumulatively. The discretionary power does not exist *in vacuo,* but as a vehicle by which the legislature in its discretion has seen fit to provide that those who have offended in such

manner while on parole as to result in their reincarceration may escape from the mandatory provisions of §13-8-20. So viewed, it is clearly within the constitutional competence of the legislature to enact.

The only authorities which petitioner has brought to our attention as supporting his position that the discretionary power is unconstitutional are not in point. In *Commonwealth ex rel. Banks* v. *Cain, supra,* the court upheld the constitutionality of an act providing for the establishment of a uniform and exclusive system for the administration of parole in Pennsylvania. In so doing, however, it struck down those portions of the act which purported to grant to the parole board the power (a) to extend the period of parole beyond the maximum time imposed and (b) to discharge a prisoner from parole prior to the expiration of his parole period. The challenged portion of §13-8-20 does not, however, purport to give to the parole board either of the powers which the Pennsylvania court held to be beyond the legislative power.

*People ex rel. Ingenito* v. *Warden & Agent of Auburn Prison,* 267 App. Div. (N.Y.) 295, is of no assistance to petitioner. The New York statute there set out and construed was substantially different from G. L. 1956, §13-8-19, which provides that the time between the release of a prisoner under a parole permit and his return to the adult correctional institutions shall not be considered as part of his original sentence.

We hold the italicized portion of §13-8-20 not to be in contravention of art. III of the Rhode Island constitution and we therefore answer each certified question in the negative. The papers in each case are ordered sent back to the superior court for further proceedings.

PAOLINO, J., did not participate in the decision.

# APPENDIX

"13-8-20.  Service of original sentence by parolee committing offense while on parole.—If a prisoner at the time his permit is revoked is confined in any penal institution on any criminal process or under sentence for any offense committed while he was at liberty upon parole, the order of the board for his return to the adult correctional institutions or the reformatory for women, to serve the remainder of his original sentence, shall be served upon the release of such prisoner from the penal institution wherein he is confined as aforesaid, *and it shall be discretionary with the board as to whether or not the time of serving the remainder of his original sentence runs concurrently with, or consecutively to, any other sentence.*"  (italics ours)

*J. Joseph Nugent,* Attorney General, *Corinne P. Grande,* Special Counsel, for respondent State.

*Aram K. Berberian,* for defendant petitioner.